## MERTZ *v.* DISTRICT OF COLUMBIA.

### BUILDING REGULATIONS; PERMITS.

Where the proprietor of a store cuts a door in a partition wall between his store and the entrance of an adjoining theatre, without applying for or obtaining a permit from the building inspector, he is property convicted in the police court of violating section 182 of the building regulations, relating to theatre entrances and their construction, and is also guilty of violating section 20 of the same regulations, which requires the building inspector to determine whether an intended repair to a building is such as to require a formal permit.

No. 1074.  Submitted May 16, 1901.  Decided June 18, 1901.

IN ERROR to the police court of the District of Columbia. *Judgment affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Sidney T. Thomas* for the plaintiff in error.

*Mr. Andrew B. Duvall,* Attorney for the District of Columbia, and *Mr. Clarence A. Brandenburg,* Assistant Attorney for the defendant in error.

Mr. Justice BARNARD, Associate Justice of the Supreme Court of the District of Columbia (who sat with the court in the hearing of this cause in the absence of Mr. Chief Justice ALVEY), delivered the opinion of the Court:

This case comes here on a writ of error from the judgment of the police court of the District, wherein the said plaintiff in error, Edward P. Mertz, was found guilty of violating a provision of the building regulations, and sentenced to pay a fine of $10.

From the bill of exceptions it appears, that said plaintiff cut a door in the partition wall between his store and the F street entrance to the Columbia theatre, on March 19, 1900, without a permit from the inspector of buildings. It also appears that such opening did not affect the strength, or stability, of the building; did not increase the cost of insurance against fire; and that its presence does not endanger public safety.

The plaintiff in error claims that the cutting of said door is a minor repair, such as does not require a permit; and that cutting the door without a permit was not, therefore, an unlawful act.

He also claims that the building regulation said to be violated is unreasonable and, therefore, void, if intended to apply to a case such as this is shown to be by the evidence.

By the joint resolution of Congress passed February 26, 1892 (27 Stat. L. 394), the licenses of theatres or other public places of amusement in the city of Washington, were terminated, unless compliance should be made by the holders, within ten days, with such regulations as the commissioners might prescribe for the public safety.

The second section of the said resolution authorizes the commissioners to make and enforce all such reasonable and usual police regulations as they may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the District of Columbia.

By virtue of the powers vested in them under this resolu-

·tion, said commissioners adopted certain regulations, en-
·titled:

" Regulations for the public safety in theatres and other
public places of amusement and assembly in the District of
Columbia."

These are found in the collection of " building regula-
tions " of 1897, beginning with section 173, although they
may properly be classed in many respects with the " police
regulations." Section 182 contains this provision:

" Every approach to, or exit from a theatre or other place
of amusement, *through any other building,* shall have inclos-
ing walls of brick, stone or iron, and floors and ceilings of
approved incombustible, fire-resisting materials, *and there
shall be no opening through* said walls, floors, or ceilings."

As shown by the bill of exceptions, we must assume that
as matter of fact, the cutting of the door in this case, while
the store is ·occupied by the plaintiff in error in the manner
stated, does not endanger public safety.

Is that a sufficient cause, however, to authorize the court
to set aside the regulation, made by the authority of Con-
gress, and by the public officers specially charged with the
duty of providing general rules for public safety in con-
·nection with theatres and other places of amusement, where
there may be large numbers of people assembled?

It is the exercise of care, which the commissioners are
charged to do, to provide against any probability or possibil-
ity of fire or panic in, or at the entrance of a theatre, where
·crowds are so frequently assembled; and if in their judg-
·ment the general regulation quoted, will best protect the
·public, should the court set it aside in a special case, where
its nonobservance might not endanger public safety?

If after the door is held to be properly there, the store
·of Mr. Mertz should be used for other purposes than those
for which it is now used; or if it should be rented to some
·one for a more dangerous business, and by reason of such
dangerous use a fire should occur therein, while the peo-
ple were in the theatre, or just going out, there would
be great danger of injury to those in that entry-way, not

only from fire and smoke coming through the door and filling the room, but from panic and crowding. This unforeseen possibility is better guarded against, if the regulations should be strictly observed and no door, or other opening, should be allowed in the walls of this deep vestibule, or entry, to the theatre.

A change of tenant might take place any time, without the knowledge of the commissioners; so that the regulation must be considered with a view to all kinds of tenants, and not alone as to Mr. Mertz and the drug store.

If a fire should occur in the theatre itself, while filled with people, they should have as safe a way provided for escape to the open street, as the circumstances of the case would permit; and the commissioners, in the exercise of their discretion, have evidently concluded that such safety will be provided by the enforcement of this regulation.

These regulations are not made from prejudice to any particular person, or for the purpose of favoring any person; but they are made in the interest of the whole community; and unless the individual citizen who claims to be aggrieved thereby, can point out unmistakable grounds for interference by the courts, such regulations ought to be upheld for the general welfare.

These regulations are undoubtedly within the powers conferred on the commissioners by the said joint resolution; but beyond these the said commissioners were authorized by act of June 14, 1878 (20 Stat. L. 131), to make and enforce such " *building regulations* " for the said District as they may deem advisable, and that said regulations so made shall have the same force and effect within the District of Columbia as if enacted by Congress.

Under this grant of power, they have provided by section 20 of the regulations that permits are not required for minor interior *repairs,* where there is no interference with the construction of the building; but in every such case the fact is to be determined by the inspector of buildings; so that his office must be informed of all such contemplated repairs, and he must determine whether it is a matter that requires a

formal permit; and if so, under what restrictions and safe-guards such permit shall be granted.

·In the present case, the plaintiff in error made no such application, and so the judgment of the officer specially charged with the duty of deciding whether such *repair*, (or more properly, *alteration*), was allowable or not, was not obtained. His act in cutting the door without informing the inspector, was a violation of this provision, as well as of said section 182.

We do not think either of these requirements unreason-able, and we find no error in this record; and the judgment of the police court will, therefore, be *affirmed, with costs, and it is so ordered.*